# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

UNITED STATES OF AMERICA                                               PLAINTIFF

v.                                                            No. 1:09CR139-M-S

KERMIT OMAR ROGERS                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on remand from the Fifth Circuit Court of Appeals.
The defendant, Kermit Omar Rogers, entered a conditional plea of not guilty to Count One of the
Superseding Indictment, which charged knowing and intelligent possession of crack cocaine in
excess of 50 grams, in violation of 21 U.S.C. § 841(a), (b)(1)(a).  Rogers reserved the right to
appeal the court's denial of his motion to suppress under FED. R. CRIM. P. 11(a)(2).  Rogers then
appealed that denial, and the Fifth Circuit vacated this court's decision and remanded the case
for an evidentiary hearing on the motion to suppress.  The court held that hearing on December
11, 2012.  For the reasons set forth below, Rogers' motion to suppress will be granted.

### Facts and Procedural Posture

Kermit Omar Rogers ("Rogers") was charged in a two-count superseding indictment with
possession of more than 50 grams of cocaine base with intent to distribute and possession of a
firearm by a previously convicted felon.  He executed a waiver of rights form close in time to the
interrogation.  Though Rogers signed the document, he did not indicate on the form whether he
had read the contents of the waiver – or that someone had read the document to him.

Rogers was questioned by law enforcement authorities regarding this case on June 17,
2009, as the law enforcement officers were executing a search warrant on a parcel known as 320
CR 401.  During the search, authorities found illegal drugs – 5.89 grams in the residence at 320

CR 401, in Shannon, Mississippi, and 189.73 grams in a red truck parked outside 320A CR 401.

In a motion to suppress [15] filed February 9, 2010, Rogers argued that the drugs found in his truck parked outside 320A CR 401 should be excluded because that location was not included in the search warrant. In its response, the Government represented to the court: (1) that "the officers found a larger amount of crack cocaine inside a red truck *parked outside the residence* [at 320 CR 401]," and (2) that "[t]he red truck belonging to the defendant was found *parked in the back of the residence located at 320 CR 401*." (emphasis added). Based on these representations, the court denied Rogers' motion to suppress without an evidentiary hearing.

Rogers entered a conditional plea of guilty to possession with intent to distribute in excess of fifty grams of crack cocaine in violation of 21 U.S.C. § 841(a), (b)(1)(a). The plea agreement stated that "[p]ursuant to Rule 11(a)(2), of the Federal Rules of Criminal Procedure, the defendant Kermit Omar Rogers, reserves the right to appeal the adverse determination of his motions to suppress." The court accepted Rogers' guilty plea and sentenced him to 120 months imprisonment. Rogers appealed, and the Fifth Circuit Court of Appeals vacated the court's judgment, holding that this court abused its discretion by basing its ruling on the Government's statements in its pleadings. The Fifth Circuit remanded the case for an evidentiary hearing to determine whether the red truck was located on the property identified in the warrant and, if not, whether the evidence obtained might fall within an exception to the exclusionary rule.

**Evidentiary Hearing**

The court held an evidentiary hearing on December 11, 2012, to make these determinations. The proof presented at the hearing, including photographs, established that the red truck was located about 200 to 250 yards away from the residence listed in the search warrant, 320 CR 401. As to the building where the truck was parked, it had its own clearly

marked address (different from the address listed in the warrant), its own driveway connecting it to the road, its own separately billed connection to electrical power, a different E911 address (registered to another person), and it was recorded as a separate property owned by another person.  To reach the 320A address from the residence identified in the search warrant, one would have to go to a shed behind the residence, follow a single-lane dirt road around a corner, pass two more sheds and some trees, and go between two pastures (fenced on both sides).  Indeed, the property at 320A CR 401 could barely be seen from the residence at 320.

The court received testimony from law enforcement officers of the drug task force, Agent Sam Warren and Paul.  Howell was at the time a Lieutenant supervising field operations for the local drug task force.  They revealed – for the first time in any document or proceeding – that, recognizing how far away the 320A building was from the residence at 320, they returned to the carport at 320 and called the Justice Court Judge who issued the warrant (who was out of chambers eating lunch) and that he extended the scope of the warrant over the telephone.  Based on the verbal approval of the judge, the police officers searched the premises at the 320A address and the truck parked there – and discovered 189.73 grams of crack cocaine – a far greater amount than they had discovered at the residence.

Based on the discovery of the large amount of crack cocaine in the red truck, Rogers was charged in the superseding indictment with possession of more than 50 grams of cocaine base with intent to distribute.  The small amount of crack cocaine (5.89 grams) found in the residence at 320 – by itself – would not support this charge.  The charge of possession of a firearm by a convicted felon would not be affected by the instant motion to suppress because the firearms were found in the residence at 320 CR 401 – the place listed in the search warrant.

## The United States Constitution

Police officers, prosecutors, and even judges may benefit by occasionally reviewing the Constitution to ensure their actions are firmly grounded in the law.  Thus anchored, a law enforcement officer can proceed properly with his investigation, a prosecutor can form sound trial strategies, and the court can render decisions on solid constitutional footing.  None of these things happened on the way to the court's denial of Rogers' motion to suppress.  Sometimes the Constitution seems to be an aggravation to be ignored in a rush to complete an investigation or prosecution.

The very purpose of the Constitution is to establish the form of government of this country – and to limit the power of that government, thus protecting the *people* from the *government*.  Though police officers and prosecutors perform necessary tasks to protect the public, they are nonetheless agents of the government against which the Constitution offers protection.  Courts have recognized this truth since the founding of this nation.

> That the people have an original right to establish, for their future government, such principles as, in their opinion, shall most conduce to their own happiness, is the basis, on which the whole American fabric has been erected.  The exercise of this original right is a very great exertion; nor can it, nor ought it to be frequently repeated.  The principles, therefore, so established, are deemed fundamental.  And as the authority, from which they proceed, is supreme, and can seldom act, they are designed to be permanent.

> This original and supreme will organizes the government, and assigns, to different departments, their respective powers.  It may either stop here; or establish certain limits not to be transcended by those departments.

> The government of the United States is of the latter description.  The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written.  *To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained?*  The distinction, between a government with limited and unlimited powers, is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts

allowed, are of equal obligation.

*Marbury v. Madison*, 1 Cranch 137, 1803 WL 983 (emphasis added).

### The Fourth Amendment

The Fourth Amendment, an integral part of the protections afforded under the

Constitution, reads:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be
> seized.

U.S. Const. Amend. IV. The Fourth Amendment contains fifty-four words. It prohibits the

government from conducting unreasonable searches and seizures – and requires that, to obtain a

warrant, the government official must, under oath, establish probable cause to execute the

warrant, and describe with particularity the place to be searched and the person or things to be

seized. These concepts are simple.

### Application of the Fourth Amendment to the Present Case

Though Fourth Amendment issues can be difficult to decide in some cases, they are

straightforward in this one. The description in the warrant of "the place to be searched" reads:

> The affiant has good reason to believe that certain things hereinafter described are
> now being concealed in or about the following place in this County:
>
> 320 CR 401, Shannon, Lee County, Mississippi,
> together with all approaches and appurtenances thereto. Also, all vehicles and out
> buildings on the property.

The property where the red truck was located – 320A CR 401 – is in no way part of that

description. It has a different address. It is owned by someone other than the defendant. It is at

least 200 yards away from the property at 320. It has its own driveway leading to the main road.

It has its own metered connection to the power company – in someone else's name. It has a separate E911 address – registered to someone other than the defendant. It is barely visible from the property covered under the warrant. Though a small dirt track leads from the back of the property at 320 to the property at 320A, one must wind around a turn and travel past various structures and fenced pastures to reach it.

The investigating officers knew that the situation was problematic enough that they now – for the first time ever – claim they called the judge issuing the warrant in an effort to shore it up. They made no effort whatsoever to document the alleged telephone call, and the issuing judge, according to the officers and representations by the Assistant United States Attorney, had absolutely no recollection of having received such a call. Indeed, the government did not even call him as a witness. The court gives the alleged call no weight at all.

Though Fourth Amendment issues can sometimes be thorny, there is nothing difficult about the decision in this case because, by any rational measure, the law enforcement officers' search of Rogers' truck was unreasonable. Neither the truck nor the building by which it was parked were within the scope of the search warrant, and the officers' purported telephone call neither expanded the scope of the warrant, nor constituted a new warrant.

Though obtaining a warrant by requesting it from a judge over the telephone is permissible under FED. R. CRIM. P. 4.1, the officers followed not one of the strictures of the rule that protect a defendant's rights under the Fourth Amendment. Rule 4.1 requires that: (1) the request be given "under oath or affirmation" (Rule 4.1(b)(1)); (2) the testimony be recorded verbatim by an electronic recording device or in writing; (3) the testimony be transcribed, certified as accurate, and placed in the record; (4) the judge issuing the telephonic warrant sign it; and (5) the person seeking the warrant prepare a proposed duplicate original of it – and read

-6-

or transmit its contents to the judge.

These requirements make the electronic procurement of a warrant reasonable. Without such protections in place, "telephonic warrants" are rife with the possibility of abuse by the government, as there would be no sworn record reduced to writing for a defendant (or a court) to review. In addition, without careful sworn documentation of law enforcement's representations to the court, such "telephonic warrants" would permit nearly any search to expand without practical limit. Officers could repeatedly call the issuing judge with unsworn descriptions of the scene to obtain authority to search an ever-expanding area. This is the circumstance in which Rogers found himself in the present case – a circumstance against which he could not raise a substantive challenge, as the critical facts were nowhere to be found in the record. Further, as the court conducted no evidentiary hearing, he had no chance to expose the warrant's deficiencies. The actions of the law enforcement officers violated the Fourth Amendment.

## The Exclusionary Rule

A rule without a means of enforcement is merely a polite suggestion. For this reason, to enforce the requirements of the Fourth Amendment the Supreme Court began using the exclusionary rule. The rule states that not only can the evidence obtained via an illegal search be excluded from consideration in a criminal case, but also any indirect evidence gleaned through use of the illegally obtained evidence. *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266 (1939). The court considers such evidence "fruit of the poisonous tree;" it is tainted with violation of the Fourth Amendment. *Id.* There are, of course, exceptions to this rule: (1) an attenuated connection between the illegally obtained evidence and the evidence arising from it[1];

---

[1]*Id.*

(2) an independent source that led to the discovery of the evidence to be used[2]; and (3) a scenario in which the discovery of the evidence to be used would have been inevitable, illegal search notwithstanding.

## The Good Faith Exception Does Not Apply

Both officers are aware of the standard of reasonable good-faith reliance on a search warrant, correctly set forth by the government in its response to Rogers' motion to suppress. First, the court must "determine whether the good-faith exception applies. The second step requires the court to 'to ensure that the magistrate had a substantial basis . . . for concluding that probable cause existed.'" *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997), citing *United State v. Leon*, 468 U.S. 897, 922-23 (1984), and quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The standard for the good-faith exception is that "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecutions's case-in-chief even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997). "Issuance of a warrant normally suffices to establish good faith on the part of law enforcement who conduct a search pursuant to the warrant." *Id.* Law enforcement officials cannot establish objective good faith, however, when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render the official's belief in its existence entirely unreasonable.'" *Id.* quoting *Leon*, 468 U.S. at 923. The good-faith exception to the exclusionary rule permits officers to rely upon a warrant supported by an affidavit alleging more than wholly conclusory statements even if the affidavit is ultimately found not to establish

---

[2]*Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 307 (1939).

probable cause. Consequently, a skeletal affidavit does not justify good-faith reliance on a warrant.

First, Rogers does not challenge the search of the residence at 320 CR 401, as the search warrant clearly applied to that residence and any motor vehicles and outbuildings on "the property." As to the 320 residence, the affidavit was far from skeletal. Thus, probable cause existed to search the residence at 320 CR 401. However, as discussed above, the officers did *not* have probable cause to search either the building at 320A CR 401 or Rogers' red truck, and the court must assess whether the officers' reliance upon the only warrant issued (for 320 CR 401) as a basis to search 320A – constituted reasonable good-faith reliance upon the search warrant.

Put simply, the good faith exception to the exclusionary rule does not apply in this case because the officers did not act in good faith. Both officers testified repeatedly that they reasonably relied on the Justice Court Judge's warrant and the attempted expansion of that warrant over the telephone. Two purposes of an evidentiary hearing are to present evidence to the court in the form of testimony and documents – and to test the statements of witnesses in the crucible of cross-examination. The evidence presented strongly supports Rogers' view of events, and cross-examination of the witnesses left them without credibility.

The demeanor of both witnesses and the content of their testimony was, to say the least, dissembling. The omissions in their preparation of the case and its presentation to this court were, perhaps, more telling than their court testimony. The investigators had a camera at the scene during the search, but they used it only to take photographs of the drugs. Though they stated in court that they questioned the propriety of the search of 320A enough to call the issuing judge, they did not take photographs to show the relative locations of the residence at 320 and the recreation building at 320A – not until they prepared for the December 11, 2012, hearing.

Even then, though the photographs showed the lengthy pathway through pastures between the buildings, they did not show that 320A had its own short driveway leading to County Road 401.

They also failed to document their purported conversation with the judge issuing the warrant. Until the recent hearing, there was no record at all of what they told the judge or what he said in return. Indeed, there was no record that the telephone call even took place. In this day and age, the officers could probably have taken pictures of the scene with their personal cellular phones and sent the pictures to the judge via email, text, or other means. They took none of these actions.

The proper thing to do in this case – especially given the officers' initial hesitation at searching the building and truck at 320A – would have been to post an officer, perhaps backed by the SWAT team that secured the house at 320, then have the other officer obtain a search warrant for the building at 320A and the red truck. Though it was documented nowhere in the file, both officers testified that the Judge was in the county, available by telephone, and ready to issue a warrant. The officers chose the wrong path, to the detriment of Rogers' Fourth Amendment rights and the prosecution of the case against him. If the court were to permit this kind of conduct, law enforcement officers would have little reason to seek warrants prior to conducting searches, instead following the easier path of searching to see if obtaining a warrant is worth the trouble, then seeking forgiveness after the fact, rather than permission beforehand. If the court applied the inevitable discovery rule in this situation, it "would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment." *See United States v. Griffin*, 502 F.2d 959 (6th Cir. 1974). As such, the "inevitable discovery" exception cannot save the present warrantless search. *Id.*, *see also United States v. Congote*, 656 F.2d 971 (5th Cir. 1981). Finally, there were no exigent circumstances in this case to justify the

warrantless search of Rogers' truck.  Neither the good-faith exception – nor any other exception – to the exclusionary applies in this case, and the search of the building at 320A CR 401 and Rogers' red truck parked there violated the Fourth Amendment.  The evidence arising out of those searches must therefore be excluded.

## Troubling Aspects of the Case

Governmental actors have a duty in the criminal justice system to seek truth and justice and to do so within the bounds of the law.  If officials do not faithfully carry out these duties, then the public will lose faith in the justice system as a whole.  The prosecution in this case was more interested in securing the conviction of a drug dealer than doing so with full candor to the court and within the limitations of the Constitution.  The government in this case represented to the court that the red truck in which the drugs were found was "parked in the back of the residence located at 320 CR 401" and thus within the purview of the warrant.  While this fact is literally true, it is deceptive.  If the back of the house at 320 CR 401 faced west, then Oxford, Mississippi, Little Rock, Arkansas, and Oklahoma City, Oklahoma are also "in back of the residence," just farther away.  Though this example is clearly hyperbole, it highlights the nature of the representation to the court, which the court then erroneously relied upon in initially denying the motion to suppress.

Finally, the officers repeatedly stated during their testimony that they relied in good faith upon the warrant issued by the Justice Court Judge.  They clearly knew the legal standard for this exception to the exclusionary rule.  However, even if the officers actually called the Judge before searching Rogers' truck (without ever recording it in the investigative file) their testimony about the events of this case casts serious doubt as to the completeness and accuracy of those representations.  That places Rogers in an untenable position.  First, the Justice Court Judge

relied upon the officers' unsworn, undocumented, representations; then, the officers relied upon the Judge's undocumented conclusions and *ore tenus* issuance of the search warrant.  In the absence of a clearly documented record of the officers' representations to the Judge and his findings, this amounts to a *non sequitir* – a Circle of Unaccountability, if you will – and leaves a criminal defendant like Rogers without recourse in reviewing and potentially challenging the warrant.

There is a palpable difference between doing the best one can in interpreting and executing a search warrant that is, ultimately, found wanting – and knowingly cutting corners while executing the warrant, then relying upon the good-faith exception to the exclusionary rule to rescue the unlawful search.  The officers in the present case chose the latter.

The motion by Rogers to exclude evidence obtained from the search of his truck is **GRANTED**, and that evidence is **EXCLUDED** as "fruit of the poisonous tree."

**SO ORDERED,** this the 4th day of January, 2013.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**